**SO ORDERED.**

**SIGNED this 19 day of March, 2012.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

TARISA HIEN EDWARDS,                       CASE NO. 11-05862-8-JRL
                                           CHAPTER 13
    DEBTOR.

## ORDER

This matter came before the court on the debtor's objection to claim filed by Ocwen Loan Servicing, LLC ("Ocwen"). A hearing was held on January 4, 2012 in Raleigh, North Carolina.

The debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on August 2, 2011. Ocwen filed a proof of claim in the debtor's case for $159,589.58 secured by a deed of trust on the debtor's real property. Ocwen believes the postpetition ongoing mortgage payment should be $1,290.14. The debtor believes this amount is overstated. The debtor contends that Ocwen is attempting to collect a prepetition escrow arrearage through postpetition payments.

Both parties agree that the principal and interest payment should be $843.08 per month. It is the debtor's contention that the escrow account should be funded $243.85 per month, resulting in an ongoing mortgage payment of $1,086.93. Ocwen contends the $1,290.14

includes postpetition disbursements of insurance and taxes, and this shortage should be included in the postpetition payments.

After the hearing, the court was unable to determine the amount of Ocwen's postpetition claim without an escrow analysis. On February 17, 2012, the court entered an order requiring Ocwen to submit an escrow analysis within 10 days. Ocwen submitted an escrow analysis on February 27, 2012.

According to the escrow analysis and the Real Estate Settlement Procedures Act ("RESPA") guidelines, the maximum amount that Ocwen could have required the debtor to maintain in his escrow account, at any one time, was $2,438.47; this amounts includes the cushion.[1] Ocwen made two postpetition disbursements, a tax disbursement of $1,687.17 and an insurance disbursement of $1,239.00 for a total $2,926.17. Dividing the total number of disbursements by twelve months equals $243.85 per month. If the debtor paid this amount each month the ending balance would be zero, which would result in a shortage of $2,438.47. A shortage is the difference between the ending balance and the maximum amount the lender may require the debtor to maintain in its account. A shortage can be spread out over twelve months. Here, Ocwen calculates its monthly escrow payment by dividing the shortage by twelve and adding $243.85, which equals $447.06 per month.

## DISCUSSION

The issue is whether the shortage is part of Ocwen's prepetition or postpetition claim. The debtor relies on In re Beaudet for the proposition that the shortage is a prepetition arrearage

---

[1] The lender may require the debtor to pay a "cushion" which is limited to no more than 1/6 of the total disbursements for the year.

and should thus be treated as a prepetition claim and not included in the debtor's ongoing monthly mortgage payment. In re Beaudet, 455 B.R. 671, 673 (Bankr. M.D. Tenn. 2011). The creditor in Beaudet calculated the escrow payment based on the funds necessary to pay future escrow items and the postpetition disbursements that it made because of the debtor's failure to make prepetition escrow payments. Id. at 672. The creditor did not include the escrow arrearage in its prepetition claim. Id. Instead the creditor, "accounted for the pre-petition escrow shortage in its post-petition calculation of the debtor's future monthly escrow payments." Id.

In determining whether the shortage was part of Ocwen's prepetition or postpetition claim, the court, relied on the debtor's loan documents. The court stated,

> the debtor had an obligation to make monthly escrow payments, and Ocwen had a right to collect past-due escrow payments without waiting until the taxes and insurance bills had to be paid. . . . [T]he mortgage documents establish that the debtor's obligation to pay into the escrow account was enforceable, thus, creating a pre-petition claim for the unpaid escrow. Therefore, the pre-petition escrow shortage should have been included in Ocwen's pre-petition claim rather than calculated into future escrow payments.

Id. at 673.

The court finds the reasoning in Beaudet dispositive. Here, the language in the debtor's loan documents indicates that Ocwen had a right to collect past-due escrow payments without waiting until the disbursements had to be paid. Accordingly, the ongoing monthly payment should include $243.85, to account for future escrow items, and the cushion amount $40.64, but should not include the pre-petition escrow arrearage of $203.20 per month. Thus the new ongoing monthly mortgage payment should be $1,127.57.

Based on the foregoing, the debtor's objection is **SUSTAINED**. Ocwen is entitled to a prepetition claim for escrow arrearages but this amount cannot be included in the ongoing mortgage payments. Ocwen may amend its proof of claim accordingly.

**END OF DOCUMENT**